Next case on the dock is 5-13-298 In re Marriage of Dossett v. Dossett. Counselor, you may proceed. My name is Jillian Wood. I am the attorney representing Mr. Stephen Dossett in this matter. Your Honor, this case stems from a motion to modify that was filed by our client, Mr. Stephen Dossett, in July 3, 2012. Subsequently, Mother in this case and Cheryl Dossett filed a trial motion to modify the petition for educational expenses for the eldest child, H.D., on October 23, 2012. H.D. graduated from high school in December of 2012. There was a hearing on the record. Well, there was a hearing, but not on the record, in front of the trial court. There was a subsequent then motion to obviously rehear, reconsider the decision that was made by the trial court after that hearing. There was a transcript of that hearing provided. That is included in the court's record. And within that, there were two major issues that the court determined that we are here appealing before this court today. Number one was the court's denial of both Mother and Father's motion to modify. At the time that this was filed, the minor child in the court's decision had graduated from high school. Pursuant to 750 ILCS 5-505, child support terminates as of the date that a child turns age 18, or if the child has not yet graduated from high school, will extend until the time that the child is, they can be age 19, but it will extend until that child has graduated from high school. Pursuant to 750 ILCS 5-510, there provides a very specific, that's the specific modification statute in regard to child support. And then 5-13, 5-513 obviously relates to post-majority support. The court's order was that despite the child being graduated from high school and achieving the age of 18, that Mr. Dossett was, his motion to modify was essentially denied. In other words, the court extended his child support obligation of $1,500 per month pursuant to the judgment of dissolution of marriage beyond that child's graduation date. We believe that this is an error. I think that specifically in the Waller case, there were specific instances wherein the court said that you may have options for modifying child support. 5-10 certainly provides that a change in circumstances. However, in the Waller case, I think what the court said was that specifically there's no authority under 5-10 to extend the child support obligation pursuant to 505 beyond the time the child turns age 18 or graduates from high school. That's one of the major issues in this case. Counsel, let me ask you about the provision in the original marital settlement agreement, which to me appeared to be somewhat unique with the wording that the respondent shall pay petitioner the sum of $1,300 per month until such time as the youngest child reaches 19 years of age. Correct. It didn't say about the time each child reaches 19, but it says the time of the youngest child reaches 19, and then they handwritten in this settlement agreement, respondent shall have the right to petition court for reduction in child support when children reach 19. Correct. So, the parties agreed to this. Correct. Willingly. Why doesn't that stand? That second provision, the handwritten provision, which allows them to modify any time a child reaches age 19, is specifically the issue that we have within this case, is that this child had achieved graduation from high school. You know, the specific facts of the case, obviously we don't have findings, but he would be able to modify them when this child turns 19, then pursuant to that agreement. And so, there was that sort of savings clause. I agree the original judgment, you know, is slightly confusing to have this, but that savings clause underneath would allow him to modify, and that is where we are with regard to this modification. Okay. So, I mean, getting back to that, obviously I think the statute is very, very clear. There is specifically a change of circumstances, which is provided under the statute that the 18 have the 19 if they've graduated, you know, if they're still in high school. And in the court's judgment, the court was very clear that it denied both dad and mom's motions to modify. So, there was no argument under 505, you can't extend this. And granted, while there was a petition for post-majority support that's on the record as well for the extended support of the child, I think the Waller case really says that while the court does have discretion to order this, it doesn't mean it has unfettered discretion to do so. And there are certainly four factors under 513 that I will discuss in my next point that have to be considered in order for the court to continue to extend or provide some type of support for a child, which takes us to our next sort of issue within this case. Our appellate brief basically states that the court erred in apportioning 85% of the child's, I guess, surplus expenses to our client, Mr. Dossett, as opposed to, I guess, exceeding the prayer for relief, which was included in Ms. Dossett's motion, which she was only seeking 50% of the expenses for the child. Some of the things that I think were failed to be considered by the court was that when you're considering expenses under 513, when you're considering these post-majority expenses, those expenses are not, I mean, they're not limited to room, board, dues, tuition, transportation, books, and fees. There's also, in the Peterson case, the court states that basically there is additional living expenses. Support can include food and shelter. I think one of the major issues within this case is that essentially when the court ordered Mr. Dossett's child support not to be modified under 505, you're essentially still paying for support and care of the children, I mean, under the household. By ordering now him to pay for the surplus, which included the expenses of the child for food and shelter, you've essentially double dipped. You've said, I'm not changing your child support. You're going to continue to pay support for this child that lives in the household, and I'm going to add these additional expenses for the child that she's requested under her petition or under Mother's petition for the post-majority support. So those expenses were duplicated then under both sides. So I think it's certainly, to me, it seems like there's an abuse of discretion of the trial court to suggest that I'm going to, you're going to have to pay double the expenses, not only what you're paying in child support because we're not going to modify that. But we've also got these expenses that the child's claimed in her expense report over here that includes living expenses and food and things like that, all of those things which would be covered under child support. So it's essentially a double dip. You're asking Mr. Dossett to pay both, double costs for the child's expenses and food and shelter. And that's in particular for the eldest child is the childhood issue. The other main issue that we had on appeal is the issue of the apportionment, again, the apportionment of 85% of the eldest child's shortfall to Mr. Dossett. It basically failed to consider the financial resources of both parties, the standard of living that both parents would have expected had the divorce not dissolved, the marriage. And I think one of the major issues is that, you know, 513 provides four factors that we have to consider in doing all of this. And I think the court really left out, I think, those financial resources of the parents and considering all of the financial resources of the parents. Clearly in the record at the motion for rehearing, it was discussed that there was a focus really on dad's gross income. That was really only the focus was dad's gross income. And the court had done these calculations. And apart from the fact that we did have a case stub that I think supported a different, obviously a different conclusion, the court really only focused on that and did some calculations based on, I guess, the court's assumption about certain tax brackets and things like that. And it's basically saying, well, dad's under-reporting his income. He's got the ability to pay for this. He can do this. Well, there is the issue of dad's financial statement as well, which was on file with the court. The court didn't consider the expenses of the parties and also didn't consider the expenses of the child. Certainly the child had claimed expenses of $18,564. And part of that was $300 for food in regard to this child. With respect to that kind of double-dipping argument, the court did determine that 28% for two children would be slightly over $1,300. The one issue with the court's calculation, if you look at the case stub on its face, there are deductions that were not taken out that Mr. Dossett was paying, pursuant to the judgment, for medical insurance, vision, dental, and then there was life insurance that was taken out to secure child support payments. All of those are basically deductions that are applicable under the net income provision under 505. So to determine his net income, we had to take those things out. When the court took the amounts out, the court only took out federal, state, Social Security, Medicare taxes. So you take those deductions, which was I think about $18,000-some-odd, I have the specifics here. I think it was $18,132.06 based on that case stub. There is an additional $8,807.06 in those additional deductions that he would be entitled to under 505 that the court didn't take out. Was that argued at trial? It's hard to know because there's no record of anything. All we know is that the case stub is part of the court file, and presumably this case stub was in there. Were you a trial counsel? I was not trial counsel. And somebody filed a bystander report? No, no. There was only, as I understand it, there was the petitioner, Mr. Dossett, I mean the appellant, Mr. Dossett, and Ms. Dossett that appeared in front of the trial court on that day. So they were pro se? They were pro se. And I think if you look at the transcript of the motion for rehearing, I think the trial court expressed its frustration in that it was, you know, I guess overwhelmed by the sea of pro se petitions that were on file, and he had to wade through all of that. So unfortunately, yes, we don't know exactly what happened at that original hearing, but we do have the transcript from the motion for rehearing. And certainly that's where the court begins to talk about his gross income, talking about this pay stub that they did have as part of the record. And clearly from that pay stub, you can see obviously the deductions from federal, state, Medicare, Social Security taxes, but those medical insurance costs as well for the children had been backed out. And if you back those things out, you get to a net income at the time of that pay stub of $47,950.88, which I think contradicts what the trial court was suggesting, that Mr. Dossett is somehow hiding income. I don't think that was it. It's just we didn't consider the other deductions that would have been applicable to his net income in recalculating child support. I think a couple other issues, Your Honors, in regard to, I think, the expenses of the child and the financial capabilities of the child, one of the sort of striking pieces that I kind of noted in the record was that on her October 27, 2010 financial statement, mom claimed food expenses for the children of $700 per month. That included all three children. In her October 28, 2012 financial statement, she claimed $680 in food expenses for the children. So that was only a 20% reduction in food, whereas on the child's request under this post-majority support petition in her financial statement, she showed $300 in food expenses. So it doesn't make sense that we've had a reduction for mom. Mom's only paying $20, but now somehow the child's food expenses have gone up $300. And it's clear from the record that the child was going to continue to live in mom's household. She wasn't going to get an apartment. She was going to be commuting from mom's household to Southwestern Illinois College, which at most her commute increased. I mean, that was the major difference between, you know, how she was living before she turned 19, graduated from high school, and after. She just had a longer commute from school to home. I think, you know, also, Your Honor, just to reiterate the point that in looking at the shortfall, obviously the court only considered Mr. Dossett's net gross income. We didn't look at the income expenses of the parties. And when you take the net income as reported on Mr. Dossett's financial statement, subtract the expenses, there is where we had what left was $100 a month per income in, like, surplus. That's what he had left over after paying all his expenses, which included his child support obligation when we counted into his net income. So, obviously, I think we didn't look at sort of what the financial position of all the parties were. And, again, just to reiterate, mom had only requested 50% of the education expenses. What we have here is the situation where the court, instead of giving mom exceeding the prayer for relief and going up to 85%. Do you agree with the court's calculation of the shortfall? I agree with the court's calculation of the shortfall, yes, the $18,000. I think that we have no issue with. I think that was clear. I think we would have, I think what we have is an argument that the short, I don't necessarily say that the court's calculation of the shortfall is incorrect. What we are suggesting is that potentially the expenses claimed by the child are slightly in excess of what I think would be reasonable. And, specifically, that one issue of the food tends to raise some questions for us, I think, as to is this reasonable. Mom says it's $700, $680, and now the child says, no, I need $300. And my recollection was in the appendix there were a lot of documents. The child applied for a Pell Grant. She had to fill out a lot of financial forms and her transcript, and she was a good student. She was a good student. And so there's this financial information in the record that we've got, in the documentary record that we've got, which would give us some of the figures, correct? That is correct, yeah, for the Pell Grants and things. I think what is the sort of, I think the court's duty and I think the party's duties when they're petitioning for this is that set of expenses that aren't documented from the school. In other words, those living expenses, food expenses, travel expenses. And that's where we start to get into this questioning as to the reasonable of this. And then the kids bring it back to the food, you know, example. But that's a really good example of where we're like, mom only spending 20 extra bucks when you were at home. How is it now that your expenses have gone to $300 per month and you're still living in the same household? Could one infer from what we've got that the child was living at home, driving to school all day, and would be eating more restaurant meals while attending school away from home? I think you could infer that. But at the same time, I think you'd also infer that the child would take her lunch home and then, you know, take her lunch to school. Thank you, counsel. Thank you. Thank you. Police court. My name is Arlie Traubner. I represent the appellee, Cheryl Dawson, in this case. These parties were divorced in February of 2011. So the present petitions were shortly filed after that divorce. There are three children born to the marriage. Hannah, who was out of high school, she is now 19, but she was born in 1994, October. Madeline, who is now 17, and Sidney, who is now 14. So I think the issue that Your Honor raised with regards to the language of the judgment is somewhat pertinent in this case because at the time the petition was filed to reduce child support, the oldest child was only 18 at that time. And the judgment, even with the language that was printed in it or written in it, says that the respondent should have the right to petition the court for a reduction of child support when the children reach age 19, which wasn't the case. However, the petitioner or the respondent who was not represented, she didn't raise that issue. As counsel indicated, there's no transcript. So I don't know if the trial court considered that issue at all. We do think, though, that the decision of the trial court is not against the manifest weight of the evidence. I think what the judge tried to do in this case was set the child support in the amount of 28% of the father's income. And I think if you look at the limited evidence that we have, we know that his gross income was $74,890. That's from his last pay stub, which is in the record. He filed a financial statement, which is a lot, shows a lot less than that in the gross income. But if you take his statement and you take just his deductions for assuming those are correct for all of his taxes, Medicare, Social Security, and then if you deduct what he puts on his financial statement for medical insurance, you come up with a net income of about $53,000. You take that times 28%. That comes out to about $1,240 a month in child support. The court left it at $1,300, so it's very close. And as the court knows, the 28% is the minimum amount of child support, and certainly the court has the authority to go above that. In this case, the mother's income was substantially less, less than half of what the father made. The child, the elder child, was staying at home. I think the evidence was she's going to a junior college, SWCC. And I think under the statute, the court has the authority to award certain expenses for that. The educational, even though the court ordered the father to pay 85% of the expenses, I think the testimony, or not the testimony, if you look at the exhibits, the expense at SWCC was about $4,000 a year. The child was getting certain grants and so forth, so really there was not a whole lot of expense that the father would have to pay while the child was at SWCC. Once again, it's unfortunate there's no transcript in this case, but I think the father who wanted the child support lower had the burden of proof. As the court intimated under the Supreme Court rules, the appellate could attempt to file a transcript for recollection. That wasn't done, and I think if you look at the evidence that we have, what the court did was reasonable, was proper. And if you look at the financial statement of the father, even he was able to put away about $6,000 in IRAs during 2012, so I think that there's no indication this was a hardship on him. The court, there was a transcript of the court's ruling on the post-trial motion, and I think the court said it made the best argument it could under the circumstances. In addition, the court said the evidence in the case indicated the daughter was to continue to live with the mother, and that was a factor in that. I think that the ratio is almost 2 to 1 in favor of your client, and it was the basis for the court's apportionment of the college expenses. So all in all, it's our opinion that the judgment of the trial court should be deferred. Thank you, counsel. Thank you. Traybauer? May it please the Court. Your Honors, I think, presuming what Mr. Traybauer had said was true in regard to the age of the child, I think one of the other issues, though, still we're missing, even if the court were to continue to order that amount of child support, that is a factor that needed to be considered in the award of the post-educational expenses. And while we can look at, I mean, the pay stub, I think, is the most telling piece of information that we have there, which clearly delineates what father's income, gross income, was as of that date, plus the deductions. And when I was telling the court about those deductions, I mean, I didn't take out the 401K. That was something, obviously, he doesn't get a deduction for. But if you take out those federal taxes, you take out the obligations for health insurance for the children, the life insurance, which was ordered pursuant to the judgment to secure child support for these children, that's where you get down to that $47,000 number, and that's where you can easily figure that the child support should have more recently been around the $1,100 range. So that's more or less what that 28% figure would have been moving forward. So in that sense, I think you do have to consider those factors in the evidence that was presented before the court. Certainly, we have no idea what the arguments were presented, unfortunately, at this original hearing on the matter. But in regard to those expenses, the 85% still, we're not considering, you know, we're failing to consider the expenses of the parties. And what Mr. Dawson's financial statement, just to say, even backing in some of those, I think the health insurance or backing in, I think, the 401K, you still have that expense issue of him having, you know, the $100 surplus per month and expecting him now to cover, I think it was the 17, you know, close to 700 or 600, bear with me for a moment. I apologize. I have this figure right here. It was the 600, so I think backing out, looking at his expenses, income minus expenses, he had maybe the $100 surplus. You're asking him, I think, to pay $642 a month in addition to the, what the court was saying, in addition to the $1,300 a month to cover this 85% shortfall. We have to look at the financial position of the parties. And I understand mom's financial position, but as noted in the record, mom did not include child support as part of her obligation. And additionally, mom was married at the time, remarried at the time. And clearly, I think the case law indicates that you, the financial resources, that all the financial resources that are accessible to the parties, including the income of potentially another spouse, and how accessible those resources are, should be considered when awarding or making an award in regard to post-majority support under 5-513. But we don't have a record of it, and it is your burden, correct? That is correct. And I think, but I think based on what the record that we do have of the motion for rehearing and the evidence was before the court, you have this issue of the 513. You have the issue of dad's income, which is clearly delineated on that pay stub, showing what dad's gross income was. So I think clearly based on that, when you back out the deductions, you back out the health insurance, that's where you get to the situation. You back all that out, and you get dad's income down to about $47,000, which is more or less what he was claiming on his financial statement. So for the court to say that dad was somehow misrepresenting his income is a misstatement. You know, that was the evidence that was before the court. I mean, I don't think that, unfortunately, I don't think that the trial court was really specifically looking at that pay stub when he made that statement. Because clearly at the very bottom of it, you see dad's net take home to date was around $30,000. You add child support back in there. You give them even that $47,000. Add specifically. That's where you start getting and look at the specific numbers and run those numbers. And that's where dad would have been entitled, I think, to the reduction in child support based on 28% of his net income. Additionally, like I said, we only looked at the gross income. And as clearly the court stated, I looked at the gross income, and I made this decision. It didn't look at the expenses of the parties. It didn't look at sort of the expenses of the child. It didn't question. It was just all based on gross income. And based on that apportionment, assigned him 85% of it, which, again, exceeded the 50% that was requested by mom in the petition. At the re-hearing, did the court, and we've got the transcript of that, make any declaration that he considered the statutory factors for post-secondary education? Or was there any? I haven't looked at that yet. I think there's indication. I considered maybe the statutory factors, but I don't, you know, I have to look. I don't know specifically. What I do know is that the court did state that, well, I think based on his calculations of income, said, well, I could modify your child support. But at the same time, I'd be increasing it, you know, based on these gross income figures that I've sat here and calculated. But I think it was clear at the re-hearing those numbers weren't based off pay stuff that was clearly part of the court's record. And that's the one piece of the record we do have is that pay stuff. Thank you. The case will be taken under advisory.